Alright, Ms. Calhoun. Thank you, your honors. May it please the court. My name is Laura Calhoun and I'm here today representing Gwen Daniel in her causes of action for disability discrimination and retaliation under the Americans with Disabilities Act. Upon filing our lawsuit in federal court, UT Southwestern, who was Ms. Daniel's former employer and who was defendant in the case, UT Southwestern immediately moved to have the case dismissed under Rule 12b-1 for one of jurisdiction. They claimed that they were an arm of the state and entitled to sovereign immunity. Of course, sovereign immunity bars an individual from suing a state in federal court without the state's consent or without Congress having specifically abrogated immunity. Under current U.S. Supreme Court precedent, the Supreme Court has found that the ADA did not validly abrogate immunity, so that's not at issue in this case. What's at issue here is the fact that the district court granted the motion and dismissed the case without properly applying the six-factor Clark test that this court has held is the proper analysis when this is at issue. What the district court did was essentially look at what's the first of the Clark factors and dismiss the case on that without further analysis. And part of the purpose of the six-factor test is it's to determine if an entity is actually a state and if the lawsuit against the entity is a lawsuit against the state itself. So it provides guidelines to balance the equities and determine the true proper classification of the entity. It's our position that by the trial court just simply looking at that first factor and not doing any further analysis that that was error. I believe this court has held that to be the case. Nevertheless, that's what the trial court did. It's our position that had the six-factor test been applied properly that the facts would have played out that UT Southwestern is not in actuality an arm of the state for purposes of 11th Amendment immunity in this case. So if we go through the analysis, the first factor is how statutes and cases actually view the entity. So under the Education Code, UT Southwestern is part of the UT system, and under the Government Code, universities are state agencies. So I would agree that that piece of this factor does favor immunity in this case. However, if you look at the next piece is what do the cases say. There is a list of cases in the briefing where they've all gone through and found UT Southwestern's an arm of the state and gets immunity. Are you familiar with system versus UT high school? I'm sorry. These cases actually show that UT Southwestern Medical Center is an arm of the state. So the cases listed, all of those cases that were concluded without having applied the six-factor test and or without the plaintiff even challenging the jurisdictional issue. So our position is that those particular cases are not dispositive on this issue because they didn't apply the Clark test. Was it your view that if Judge Fish did not apply the six-factor test, you win based on that and we send it back, or even if he didn't because it's a matter of law and it's before us that you've got to convince us on the six factors and we deal with it, which? Well, it's my understanding that it was error that he didn't apply the test. It could be reversed and remanded, but also that this court can handle this issue de novo. Right. So I'm saying moving past the first point, assuming that the six factors are there, where are you on that? And I was about to ask if you were familiar with system versus UT system and some other cases that we've had that have had this issue alive and well and the court has gone through the six factors and so forth. So help us understand this context on the six factors, how you get relief. Right. And that's, yes, I'm happy to do that and explain why they're different from like UT High School or the University of Texas Health Science Center's Houston case. What I would say is on the second factor, it is the source of funding. That's the most important factor. The courts have held that that's because the purpose of the Eleventh Amendment is to protect the state treasuries. So what the courts have done in other cases is they look to, is the state going to be liable to pay this judgment and overall is the state responsible for liability of the debts of the entity? You're not suggesting that the second element, which is all agree is the most important, you're not suggesting that it requires total funding, just some funding. Is that right? Some funding, right. And I think the courts have made it clear that it's not, that it receives only funding and it doesn't negate it. Doesn't the record indicate that Southwest got some funding from the state? Yes. That's undisputed that it does get some funding from the state. But it also does quite a bit without funding from the state. So it basically constructs and operates its clinical facilities with no funding from the state. It also receives no funding from the state or the UT system for patient services or facilities. It receives considerable funds from outside sources, such as private insurance companies. It also receives research funds from foundations and individuals. So there is, it does receive minimal funding. And I think one of my points that I saw in their documentation is that it receives no funding for these operating of their clinical facilities. It does require and use state funding for education and research. But even that state funding, they say in their legislative appropriations request, that for the last two decades, that funding itself has been extremely limited and they don't have access to formulaic increases anymore. So the only way that they can get state funding is through non-formula requests. They also, it looks like, had to submit a plan for decreasing their non-formula funding by 10%. So there's clearly some money they get from the state for research and education, but that money is extremely limited. And in contrast to them using no state funding to run their hospitals and clinical facilities, which is where my client was. You describe it as limited, so nominal or minimal state funding, but I thought we had precedent that sort of rejected that distinction. Well, I think what in the King v. University of Texas Health Science Center at Houston, what the court looked at was there was an amount of funding, but they ultimately found that the state received significant funding, which I think is a distinction in this case. What's the magic tipping point? Well, another one of the cases talked about, the Perez case talked about that they received a lion's share of their funding from the state. In King, they said substantial funding. I don't know that there's a bright line tipping point, so to speak. I think it's just part of the balancing. And in this case, you look at UT Southwestern and the way they are able to be so self-sufficient, I think it balances toward the state not being obligated for having to pay a judgment in this case. There's also, in some of the documentation that UT Southwestern's council sent over last week, there's some documents in the Legislative Appropriations Act that the way I read it, looks like it already does deal with how to handle settlements and judgments in federal court cases. And it says, although it says the judgments are paid by the comptroller, however, this is done with a voucher from the entity. This document indicates that the state's also going to require reimbursement for any such funds from the entity. The amount also to be paid in this manner is capped at $250,000 or 1% of the state-appropriated money. So, it's my position that there's no need for any money to be paid by the state in a situation like this. It's already been, it's got a system that's accountable for how to handle it, and this money isn't coming from the state. And that's really what the focus of the 11th Amendment is, is is the state going to be responsible? And it looks like they've got this set up so that they actually are not responsible. And I'd also argue that this indicates that judgments are anticipated and they're capped so that they don't interfere with the fiscal autonomy of the state, which is what, in the King case and the Sissom case, the court seemed to focus on, is even if money didn't have to be paid with state funds, would it nevertheless interfere with the fiscal autonomy of the state? And I would say, in this case, UT Southwestern is distinct from UT High School or University of Texas Health Science Center at Houston. So, the ultimate question on factor number two is, will the state have to pay for a judgment in this case? And the answer is no. The third factor is local autonomy. Excuse me. Before you go on, where do you get the test being whether the institution will be required to pay a judgment? Well, I mean, that's generally what the second factor is looking to. It's looking to protect that. And so the cases talk in terms of they question, they say, you know, the question is, is the state going to be liable to pay? And there's reference to that in the Hudson case. And it also talks about, you know, are they going to have to pay this judgment and what are their— Well, explain why there's a nexus between this judgment and number two, which says it receives state funding. It doesn't say that the state's going to have to pay this judgment. Oh, okay. I think I understand. So, yeah, it's not whether the state receives— it's not whether the entity receives funding from the state that renders it an arm of the state. It's whether the—what the immunity amendment is trying to protect is the state having to pay the judgment. So if the state is not going to be having to pay this judgment and the judgment—the entity itself paying the judgment is not going to interfere with the fiscal autonomy of the state, then that factor will lean toward finding no immunity. Okay. We'll see what counsel opposite has to say about that. All right. The third factor is local autonomy. This is whether the entity basically exercises local autonomy or is primarily controlled by the state. I would, again, argue that UT Southwestern constructs and operates its facilities using no state funds. I think this would lend evidence that they are—they have got significant autonomy. Their website also demonstrates considerable local autonomy. Per the website, they're led by local leadership. Dr. Daniel Podlosky leads a team of physicians, scientists, educators, and administrators in the mission of UT Southwestern. And even though the statutes say that they are governed by the UT system, there's no mention of the Board of Regents or the UT system on this leadership page. So I would argue that that would be a factor that would balance in favor of them having significant local autonomy as opposed to being controlled by the state in their day-to-day operations. The fourth factor is concerns with local and statewide issues. This is whether the entity acts for the benefit of the state as a whole or for the special advantage of the locals. On this point, I'd say we do agree, as the court said in the King case, that education and research are statewide concerns. However, again, I would point to the fact that UT Southwestern is confined locally in Dallas. I know that the court didn't go for that argument in the King case, but I would assert, again, that it's the local inhabitants that are going to be primarily benefiting and using the hospitals. And that favors that factor. The fifth factor is authority to sue and be sued in their own name. I think these cases show that they are sued in their name and not requiring the state to be substituted in. And the last factor is the ability to hold and use property. Again, they construct and operate two hospitals with no state funding. The fact that UT owns the land doesn't negate the fact that they obviously have the ability to use and hold property. So when applying the six-factor test, it's our position that UT Southwestern is not an arm of the state and is not entitled to immunity. All right. Thank you, Ms. Calhoun. You've reserved your rebuttal time. All right, Mr. LaFontaine. May it please the court, Jason LaFontaine for the University of Texas Southwestern Medical Center. The six Clark factors are a guideline to help this court determine whether a governmental entity is a part of state or local government. Well, first off, you acknowledge Judge Fish did not iterate through the six factors. You acknowledge that, right? Your Honor, what Judge Fish did was he cited prior cases finding the exact same thing, which I think is – You acknowledge that Judge Fish did not iterate the six factors as opposed to citing to other factors. That's true, Your Honor. Just as this court in Wallis v. Texas Tech said in a single sentence that Texas Tech is an arm of the state, just like this court – That's the Fifth Circuit saying it. That's not the saying of the tribes outside. Your Honor, if the six factors – – go through and articulate the factors so we know they have appreciated it and if they just cite to a case, is that satisfying? I'm not saying that stops you. I'm just stopping you at that point. I thought you would readily sort of acknowledge that and move on, but it seems like – No, Your Honor. The six factors are simply a guideline. And when the answer in this – the answer to this question in that case should be clear. Southwestern is the flagship medical school for the University of Texas system, an entity that is itself at the heart of Texas' provision of public education. It is not a local government in any sense. Confirming this, this court can look to prior cases. In cases such as U.S. oil recovery, King v. UT Health Science Center at Houston, Lewis v. Midwestern State, Wallis v. Texas Tech, United Carolina Bank v. Stephen F. Austin, this court has said over and over again that public universities and graduate schools in Texas are arms of the state. Just last year in system, this court said that the University of Texas at Austin is inarguably a state agency entitled to sovereign immunity. And indeed, Daniel has failed to cite a single case in which this court has held that a public university or graduate school is not an arm of the state. This court can end the inquiry there. But if it goes further, it will find that the six factors merely confirm what should be clear – that Southwestern is an arm of the state. Beginning with factor one, Daniel concedes that Texas views and treats Southwestern as a part of its state government. Daniel tries to downplay this factor, however, but this factor should receive significant weight. To see why, compare it to factor two. This court has elevated the source of funding above all other factors on the premise that protecting the public fisc is an important function of sovereign immunity. The Supreme Court said in Federal Maritime Commission v. South Carolina State Ports Authority that while state sovereign immunity serves the important function of shielding state treasuries, the doctrine's central purpose is to accord the states the respect owed them as joint sovereigns. For this respect to have any meaning, it must include respect for how that joint sovereign characterizes itself and its component parts. So at the very least, factor one should be up there with factor two because both serve important functions of sovereign immunity. Calhoun says that the fraction of the fisc here, that the state portion is a sliver, and it's limited and nominal and minimal, and what do you say? I have two things to say about that, Your Honor. First, it's important to separate out state appropriations versus state funds. All of Southwestern's funds are state funds, which I will explain in a minute. But the state appropriations, what this court found substantial in King was $170 million in state appropriations. In the most recent General Appropriations Act, Southwestern received $183 million. Substantial funding in King is even more substantial in this case. Daniel argues, however, that Southwestern has funds outside of the state treasury with which it can pay judgment. But just because those funds are outside of the state treasury, this court has said over and over again, does not mean they're not state funds. All the same laws that apply to Stephen F. Austin in United Carolina Bank, that apply to Midwestern State, and Lewis that apply to King, apply to Southwestern. These funds are subject to budget planning, subject to state audit, subject to control by the Board of Regents and the legislature, which means that a judgment against Southwestern paid with these funds will interfere with the fiscal autonomy of the state. My colleague also misreads the Appropriation Act, which actually contemplates that state appropriations will be used to pay judgments in the first instance. The General Appropriations Act says that appropriations may be used so long as the judgment is less than $250,000 or not more than 1% of the budget. It then goes to the Comptroller's section, which says that if you breach that limit, then you go to the Comptroller's funds so long as there are not local or institutional funds to pay it. So in the first instance, the judgment is actually contemplated to come out of the state appropriations. And in any event, the Appropriation Act also tells us that the AG must approve any judgment paid by any funds, which is another indication that these funds are state funds. A third argument that Daniel makes in her brief and is implicit in many of the arguments that counsel made today is that you can treat the hospital somehow different from the rest of the entity. But this court in U.S. Oil Recovery rejected that proposition. It said that sovereign immunity applies to entities, not claims. You can't simply separate claims. Southwestern cannot be an arm of the state in one part of it and a local government in one other part of it. It either is an arm of the state or it is not an arm of the state. For Factor I and Factor II, we've shown, in fact, that it is an arm of the state. How specific and – going back to Judge Stewart's question – how specific and extensive must the district court's analysis of the Clark factors be? Is it enough to just collect cases and kind of rely generally on these cases? Or is there a kind of heavier burden on district courts to actually go through the test methodically, step by step? No, Your Honor. In fact, the federal rules of civil procedure say that outside of a bench trial, the court does not need to issue any findings of factor, any conclusions of law. It can simply say dismissed. So it cannot be a reversible error on an issue of law to not set out reasoning. Well, that's not totally true. We've got cases, for example, when we apply attorney's fees on the Johnson factors, it's Fifth Circuit Hornbook. The judge cannot cite the Johnson versus Railway. The judge has to go through every item there. Short of that, we reverse. Just had one two terms ago. We reverse and send it back. Exactly for that class action. Fifteen lawyers out there. I would agree. The judge didn't go through it, but clearly replied. My point is, don't go too far with that. It's an issue of law. We have cases where we say the judge . . . I'm not talking about a bench trial, but where it's a legal factor. The judge has to iterate what they are so we know in this case, judge first, judge second, judge third. Now, that's not to negate. You may be saying, in this context, that may not be true. But I'm just saying, we do have cases and some in other areas where it's a matter of law. Our court says the judge has to put it there so that we know that in this case the factors do fall out, as opposed to citing to other cases which found that to be true, but that doesn't necessarily tell us on this record. Well, Your Honor, I can see that being the case when the district court has to exercise its discretion and you need to understand what it was thinking and why it was doing something, or if it's finding facts, but the federal rules of civil procedure remain the federal rules of civil procedure. Your Honor, I'm telling you, you need me to cite to the cases? I'm saying where it's a matter of law, not discretion. I'm just saying like factors. In the Johnson factors, you've got to go through and the judge has to make a factor. I'm saying this is not different in the sense that there are this set of factors and we want to know that the district court goes through them. Like she said, there's no funding and so forth. The same one I started off asking, is it enough if the judge, like here, he cites Northern District of Texas cases from Judge Fitzwater, an 88 claim. He cites a whole bunch of cases which are probably correct. The question is just, is that enough? I know you want that to be enough, but I'm just saying before you say the federal rules of civil procedure say what they say, that may not be the answer to the question. Well, Your Honor, I submit that they are the answer, but also even if they're not, this court can simply look at the factors. This court can affirm for any grounds present in the record and it can look at the factors and the case law. We also have cases like this with other lists when we've said the court doesn't have to play Simon Says and rotely repeat those if it's clear that the court has considered them. Yes, Your Honor, and that makes sense. And there are certain cases, I mean, these six factors most often come up when it's a difficult question. I mean, when you look at Clark, you had the Tarrant County Probation Department. When you first look at that, there's a big question about whether or not that's a state or local entity. And so you go through the six factors there when it's a difficult question. But when it's clear and when there's plenty of case law out there examining similar institutions in which identical laws apply, then you can simply cite those cases. But again, even if the court, notwithstanding the federal rules of civil procedure, was required to go through and make conclusions of law, this court can still affirm because each of the Clark factors, except the sue and be sued, which this court has said is the weakest factor, all favor sovereign immunity here. Return to factor three, local autonomy. There's no question here that the Board of Regents controls Southwestern. It exercises plenary control over them. The statutes there contain no limit on the control that the Board of Regents exercises over Southwestern. And the Board of Regents itself, the members are appointed by the governor on the advice and consent of the Senate. Daniel argues that because there are very good people that run Southwestern, that it has local autonomy, but one has nothing to do with the other. Indeed, one must assume that the probation department in Clark was run by competent people. One must assume that the UT Health Science Center at Houston was also run by very, very competent people and all the other institutions in which this court has found that they lack local autonomy. This court has said that an agency will lack local autonomy in Vought, for example, where the entity had full power to act on its own, without prior approval, had no oversight, and that the governor had limited appointment authority. None of those apply here. Turning to factor four, statewide issues. Again, Southwestern is a medical school. Education, especially medical education. Hospitals are teaching hospitals, aren't they? They are, Your Honor. And as I said previously, even if you were going to limit them to a hospital that is somehow only local, again, you cannot separate out functions of an institution. It either is an arm of the state or it is not an arm of the state. But also— They don't need six Nobel laureates there for local medical needs, do they? That's correct, Your Honor. And they also have several specialty centers where people from all over the state come to seek care at Southwestern. It is concerned with matters statewide. I mean, of course it has a physical location. And my co-counsel says that, well, it used to have Dallas in the name. UT Austin has Austin in the name. I don't think that anybody would argue that it is a local government simply because it has Austin in the name. It simply signifies where the physical location is. Factor six, in King, this court pointed out that the Board of Regents maintains title and control over the property. The same laws apply here. Did you touch on five? Well, I touched on five earlier, Your Honor, the sue and be sued. This court has said that that's the weakest factor. Indeed, Southwestern does sue in its own name and can be sued in its own name. Well, does it need attorney general authority to sue, to file a suit? Well, yes, Your Honor. And this kind of goes – melts with factor one. The fact that I'm here suggests that the state of Texas sees it as an arm of the state. And, yes, the AG represents it. My question is can Southwestern file a suit without getting permission? Your Honor, the – I believe that the Board of Regents has independent litigating authority. I'm not sure exactly how the law works if that translates down to Southwestern. I don't believe it does, but I don't have a firm answer to that question. But the fact that Southwestern can sue and be sued in its own name can only prove so much because so does every other entity in Texas. The General Land Office, the Texas Department of Criminal Justice, these are all clearly arms of the state that can sue and be sued in their own name. And with those factors, balancing all of them, you have five of the six that weigh strongly in favor of finding that Southwestern is an arm of the state here and that it is entitled to state sovereign immunity from Daniel's suit. So if there are no further questions, we would ask the Court to affirm. All right. Thank you, Mr. Chairman. Back to you, Ms. Calhoun. All right. Are you ready? Thank you. In response, first of all, I did double-check, and in the Williams v. Dallas Area Rapid Transit case, Fifth Circuit case from 2001, the Court did explicitly say that it was error for the trial court not to use the six-factor test. So I think that issue is clear that the trial court did err by just really looking at only the first factor and not doing the entire test. And for that reason, then the other cases that have similarly found on the same grounds that UT Southwestern is an arm of the state are not dispositive here because they didn't do the test and or the plaintiff didn't even contest it. What is it you say makes this entity so qualitatively different that it falls outside of the many cases we've had where we have found that there's sovereign immunity? So what's the key distinction here that makes this not another case in our slew of cases where we've said there is sovereign immunity? Right. And I do think that when you look at the six factors as a whole, that UT Southwestern is distinct from the other entities. And I think primarily the funding issue and how they use their funds and the fact that they're able to run these hospitals with no funding from the state is a big distinction. They don't receive the lion's share of their money from the state. Just as Will had asked you before, we don't have any cases that have, and you acknowledge, draw some line to say, well, when you spend this much and like that, I mean, that's not the point of the test. I mean, it's the same University of Texas system. It's at Galveston, it's at Dallas, it's council offices. That just happens to be where they are located. But that's still not really helping understand what is the qualitative distinction on one of these major factors. Of course, not to say this is just another case in a line where we've said there is sovereign immunity. Well, I do think the source of funding, and it is the most critical issue, I think the source of funding is distinct. And the fact that their funding from the state is limited and in fact declining and that they are able to run these other hospitals themselves, that it makes them more... I thought council opposite said that the annual amount was in multi-millions from the state. But it's still not that part of it that runs the hospitals and they're able to... I would say that's not a significant... But the hospitals are only part of the teaching med school. This is the med school. Right. And they couldn't show their students and their interns and their residents how to do things if they didn't have a hospital there. It's just like a chemistry lab in Austin. Right, but the fact that they are able to run those facilities with no state funding, I would argue does lend itself to it being more like a city or a local municipality. In the Hudson case, the court said that what you're really looking at on this is does the entity actually stand in the shoes of the state? And if the entity is not seen as an alter ego of the state, then there's no immunity. And so that's where I would argue that they are more city-like in how they're able to run their hospitals. And they not only run them, but they build them. They construct them with no state funds. So although, yes, certainly they use them in connection with their medical school, I would argue, again, that it is more like a distinct local unit as opposed to an actual alter ego of the state. And, again, on the funding for the settlements and the judgment, the Appropriations Act actually states that, although, again, the money comes from the comptroller initially, it is required to be reimbursed. So if the state were to pay a judgment, it's not actually coming out of state funds. And so for that reason, that would negate against a finding of immunity as well. Are there any other questions? Thank you, Your Honor. All right. Thank you, counsel. Both sides for your briefing and arguments. That concludes the two cases that we have for this morning. The third case we take is not overly argued. And the panel will stand in recess until 9 a.m., in which we will convene at Tulane Law School tomorrow morning.